In the
UNITED STATES COURT OF APPEALS
For the Eighth Circuit

No. 20-3422

Criminal

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT PHILLIP IVERS,

Appellant.

Appeal from the United States District Court for the
District of Minnesota

BRIEF OF APPELLANT

MANNY K. ATWAL
First Assistant Federal Defender
District of Minnesota

U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN 55415

Attorney for the Appellant

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

The district court abused its discretion by imposing upon Robert Phillip Ivers a six-month prison sentence. The court abused its discretion by imposing a sentence that was greater than necessary to accomplish the goals of federal sentencing because of the nature of the violation itself. Mr. Ivers just wants to go home to Minnesota to live whatever life he has left.

Mr. Ivers requests this Court grant oral argument on this case. He respectfully suggests ten minutes per side will suffice to address the issue raised.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

TABLE OF ABBREVIATIONS ............................................................ iv

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUE .................................................................... 2

STATEMENT OF THE CASE AND FACTS .......................................... 3

SUMMARY OF ARGUMENT ............................................................ 10

ARGUMENT

I.      **The District Court Abused its Discretion by Sentencing Robert Phillip Ivers to Prison for Six-Months**

    **A. Standard of Review** .......................................................... 11

    **B. Legal Analysis** ................................................................. 13

CONCLUSION ................................................................................ 16

ADDENDUM:

Judgment in a Criminal Case ....................................................... Add. A
Defense Exhibit 2 ........................................................................ Add. B
Defense Exhibit 4 ........................................................................ Add. C
Certificate of Compliance and of Virus Free Electronic Brief ........ Add. D
Certificate of Service .................................................................. Add. E

Appellate Case: 20-3422     Page: 3     Date Filed: 01/25/2021 Entry ID: 4997419

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States,* 552 U.S. 38 (2007) .......................................................2, 11, 13

*Molina-Martinez v. United States*, 136 U.S. 1338, 1342 (2016) ............................12

*United States v. Booker*, 543 U.S. 220, 264 (2005) ...................................................12

*United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011) ...............................12

*United States v. Huff*, 514 F.3d 818, 820 (8th Cir. 2008) .......................................11

*United States v. Kane*, 552 F.3d 748, 752 (8th Cir. 2009) .......................................12

*United States v. Miller*, 557 F.3d 910 (8th Cir. 2009) .............................................11

*United States v. Neumiller*, 529 F. App'x 796, 797 (8th Cir. 2013) ........................12

*United States v. Petreikis*, 551 F.3d 822, 824 (8th Cir. 2008) .......................... 12-13

## Statutes

18 U.S.C. § 3231 ...........................................................................................................1

18 U.S.C. § 3553 ............................................................................................ 2, 10, 11

18 U.S.C. § 3583(e)(3) ................................................................................................11

18 U.S.C. § 3742(a) .....................................................................................................11

28 U.S.C. § 1291 ...........................................................................................................1

Appellate Case: 20-3422     Page: 4     Date Filed: 01/25/2021 Entry ID: 4997419

# TABLE OF ABBREVIATIONS

**Abbreviation**                                                        **Description**

DCD ................................................................................District Court Docket Entry

FRHT..............................................................Final Revocation Hearing Transcript

Appellate Case: 20-3422    Page: 5    Date Filed: 01/25/2021 Entry ID: 4997419

# JURISDICTIONAL STATEMENT

The Honorable Robert W. Pratt, United States District Judge for the District of Iowa presided at Mr. Ivers's final hearing on the second revocation of supervised release on November 2, 2020.[1] The government invoked the jurisdiction of the District Court pursuant to 18 U.S.C. § 3231.

The district court entered judgment on November 3, 2020. (DCD, 287).[2] Mr. Ivers filed a notice of appeal on November 16, 2020—timely under Federal Rule of Appellate Procedure 4(b). (DCD, 292). Mr. Ivers invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1291.

---

[1] Because Mr. Ivers's underlying case involved a United Sates District Judge for the district of Minnesota, and a Judge from another district presided over the entire case.

[2] Record citations are described in the Table of Abbreviations, *supra*.

Appellate Case: 20-3422     Page: 6     Date Filed: 01/25/2021 Entry ID: 4997419

## STATEMENT OF ISSUE

**THE DISTRICT COURT ABUSED ITS DISCRETION BY SENTENCING ROBERT PHILLIP IVERS TO PRISON FOR SIX MONTHS.**

*18 U.S.C. § 3553(a)*

*Gall v. United States*, 552 U.S. 38 (2007)

Appellate Case: 20-3422    Page: 7    Date Filed: 01/25/2021 Entry ID: 4997419

## STATEMENT OF THE CASE AND FACTS

Mr. Ivers simply wants one thing: he wants to go home to Minnesota. Since being released from his prison, he has been ordered to serve time at a halfway house in North Dakota, a state in which he has no ties or community support. This current violation and his prior violation are basically because of his desire to be home in Minnesota.

## I.     Background

On September 14, 2018, Mr. Ivers was found guilty of threatening to Murder a Federal Judge and Interstate Transmission of a Threat to Injure the Person of Another. (DCD, 138). He was sentenced on March 1, 2019 to a total of 18 months' imprisonment followed by three years of supervised release. (DCD, 174). The court recommended Mr. Ivers serve his time as close to the State of Minnesota as possible. Mandatory and Standard Conditions of Supervision were imposed as well as Special Conditions. One of the Special Conditions included no contact with the victim without prior consent of the United States Officer and no entry into the Warren E. Burger Courthouse in St. Paul, Minnesota. He is to wear a GPS location monitor at all times. (DCD, 174). Mr. Ivers appealed his conviction and the conviction was affirmed on October 20, 2020. (DCD, 273). On August 1, 2019, Mr. Ivers was released from custody and began his supervision. On March 13, 2020, after the district court found that Mr. Ivers violated his conditions of release, he was sent back

3

to prison to serve six months followed by 180-days at a halfway house in North Dakota. (DCD, 245). Mr. Ivers was released from custody and began his supervision on August 11, 2020.

## II.   Pending Appeal and Prior Supervised Release Violation

On February 9, 2020, the probation officer filed a notice of supervised release violation alleging that Mr. Ivers violated standard conditions of supervision:

1. You must not knowingly leave the federal jurisdiction district where you are authorized to reside without first getting permission from the court or the probation officer.
2. You must follow the instructions of the probation officer related to the conditions of supervision.

On March 13, 2020, after a contested violation hearing, the Honorable Robert W. Pratt found Mr. Ivers in violation of his conditions of supervised release. The violation was because Mr. Ivers expressed his intent and need to live in his home state of Minnesota. He filed a notice with the court indicating his was traveling to Minnesota with the intent of staying in his home state. (DCD, 226). He was arrested outside his brother's home in Minnesota and as a result, a violation was filed. The court after reviewing 3353(a) factors sentenced Mr. Ivers to six months in prison followed by 180 days at a halfway house in Fargo, North Dakota. The court stated additional terms of supervision. (DCD, 245). Mr. Ivers filed a notice of appeal on March 26, 2020; the appeal is pending before this Court.

4

### III.    Second Supervised Release Violation

On October 2, 2020, the United States Probation Office filed a violation report alleging that for a second time, Mr. Ivers had violated his conditions of supervision. (DCD, 274 & 275). The allegations were as follows:

> STANDARD CONDITION: After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

> STANDARD CONDITION: You must follow the instructions of the probation officer related to the conditions of supervision.

> SPECIAL CONDITION: The defendant shall reside for a period of 180 days in a residential reentry center in Fargo, North Dakota, as approved by the U.S. Probation Officer and shall observe the rules of that facility.

> SPECIAL CONDITION: The defendant shall maintain appropriate communication with members of the U.S. Probation Officer. The defendant shall not swear, use excessive volume, use sexually explicit language, or make threats. This includes both verbal and written communication.

In short, it was alleged that Mr. Ivers did not communicate with his probation officer in September 2020, did not attend mental health counseling, left the halfway house and used profane language with the United States Probation Officer. (DCD, 274).

### IV.    The Contested Hearing

A contested hearing was held on November 2, 2020. Counsel for Mr. Ivers introduced eight exhibits that are attached to this brief. Exhibits 2 (report of Mr. Ivers

5

being assaulted at the halfway house on September 5, 2020) and 4 (medical records showing that Mr. Ivers was in the hospital on September 4 because he was so ill) are attached to this brief. (FRHT, 27) (DCD, 285).

### A. STANDARD CONDITION: After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

The USPO reported that on September 4, 2020, he called Mr. Ivers and Mr. Ivers did not answer. The USPO then called the halfway house and was told by staff that Mr. Ivers had his phone next to him and was told to go to the office and contact his USPO. Mr. Ivers refused and told staff he was ill. Again, on September 8, 2020, Mr. Ivers did not communicate with the USPO. The following day on September 9, 2020, the two communicated. (FRHT, 9, 10).

Defense Exhibit 4 was a medical record showing that Mr. Ivers was so ill on September 4, 2020, that he went to the hospital. (FRHT, 30, 31). On that day, Mr. Ivers was throwing up blood; he was in pain and had many medical issues. In other words, it was clear that Mr. Ivers was simply too sick to communicate with his USPO.

6

**B. STANDARD CONDITION: You must follow the instructions of the probation officer related to the conditions of supervision.**

The USPO instructed Mr. Ivers to obtain mental health counseling and North Dakota health insurance. Mr. Ivers told his probation officer that he would see his prior counselor and had no money to pay for counseling. He further noted that he was not a resident of North Dakota and therefore not eligible for insurance. (FRHT, 11, 12). There was no dispute that Mr. Ivers said he was willing to do mental health treatment, but the issue was not having insurance. (FRHT, 32). The USPO acknowledged that Probation has contracts for free mental health treatment in Minnesota but North Dakota had no such program. (FRHT, 32). The USPO maintained that Mr. Ivers is a resident of North Dakota and therefore was eligible to apply for insurance. Yet, the USPO did not know how long an individual had to reside in North Dakota in order to be considered a resident. (FRHT, 33). Mr. Ivers had been in North Dakota since August 11, 2020. (FRHT, 14). Previously, Mr. Ivers had been denied insurance because he was not a resident of North Dakota and stated he was not planning to stay in North Dakota when applying for insurance. (FRHT, 33, 43, 60). He never intended to stay in North Dakota and has always argued to be able to go home to Minnesota. (FRHT, 61).

Appellate Case: 20-3422    Page: 12    Date Filed: 01/25/2021 Entry ID: 4997419

**C. SPECIAL CONDITION: The defendant shall maintain appropriate communication with members of the U.S. Probation Officer. The defendant shall not swear, use excessive volume, use sexually explicit language, or make threats. This includes both verbal and written communication.**

During a conversation on September 9, 2020, the USPO told Mr. Ivers he was a resident of North Dakota because he was residing at the halfway house and should apply for insurance. In response, the USPO stated that Mr. Ivers yelled "F**k you." (FRHT, 12, 22). Mr. Ivers admitted he said those words. (FRHT, 65).

**D. SPECIAL CONDITION: The defendant shall reside for a period of 180 days in a residential reentry center in Fargo, North Dakota, as approved by the U.S. Probation Officer and shall observe the rules of that facility.**

After his release from prison, Mr. Ivers was admitted to a halfway house in North Dakota – Centre Inc. – on August 11, 2020. (FRHT, 14). Centre Inc. found that Mr. Ivers did not follow the rules. On September 4, 2020, he refused to submit to a drug test and said he was feeling ill. (FRHT, 14). Again, on that day, Mr. Ivers was very ill. As shown in Defense Exhibit 4, Mr. Ivers was throwing up blood, in pain, and had many medical issues, making it just slightly difficult to take a drug test. He told staff, "I'm sick." (FRHT, 31, 51). He was taken to the hospital that same day. (FRHT, 51). The very next day, on September 5, upon feeling better, Mr. Ivers was willing to take a drug test and waited for the test to be administered in a waiting area. (FRHT, 31). Another resident approached Mr. Ivers, stood over him,

8

began yelling and then spit on Mr. Ivers. As result, for Mr. Ivers safety, he was moved to another unit in the facility. (FRHT, 15, 35). This was not the first time the resident had an issue with Mr. Ivers; there had been prior altercations. This time, the police were called. (FRHT, 34, 35). Mr. Ivers felt that this resident was a danger to him and "he was dangerous." (FRHT, 54, 55). A few days later, the other resident was removed from Centre Inc. (FRHT, 16). Mr. Ivers was told to go back to his original unit and he told staff he had other threats from residents in his original unit. After an investigation, staff felt there were no threats. (FRHT, 17). Sixty-seven-year-old Mr. Ivers expressed his safety concerns about returning to the unit to the USPO. (FRHT, 36). Mr. Ivers explained that the resident that was removed from the halfway house had a "crew." And he was fearful of that crew who remained at the halfway house. (FRHT, 56). On September 14, 2020, staff unsuccessfully discharged Mr. Ivers. (FRHT, 18). Mr. Ivers went to his sister's home in West Fargo. (FRHT, 61). After speaking with staff and Mr. Ivers, the USPO told Mr. Ivers to go back to the halfway house. (FRHT, 19). Later, Mr. Ivers called the USPO and said he was in the parking lot of Centre Inc., but did not want to go in unless he spoke to Judge Pratt. Mr. Ivers went to his sister's home in West Fargo. (FRHT, 19, 20, 61). Mr. Ivers did not want to go back to the halfway house because he feared for his safety. (FRHT, 56-60).

9

## SUMMARY OF ARGUMENT

The district court abused its discretion by sentencing Mr. Ivers to 6-months'
imprisonment by finding a Grade C violation. The sentence is greater than necessary
to meet the purposes of sentencing and does not adequately reflect the 18 U.S.C.
§ 3553(a) sentencing factors. Mr. Ivers respectfully requests this Court reverse the
district court's finding and remand for resentencing.

Appellate Case: 20-3422    Page: 15    Date Filed: 01/25/2021 Entry ID: 4997419

## I. THE DISTRICT COURT ABUSED ITS DISCRETION BY SENTENCING MR. IVERS TO PRISON FOR 6- MONTHS BASED ON A GRADE C VIOLATION.

### A. Standard of Review

The district court may only revoke a defendant's supervised release upon finding a violation of the conditions of release by a preponderance of evidence. 18 U.S.C. § 3583(e)(3). This Court reviews a sentence imposed upon revocation of supervised release for substantive reasonableness under an abuse of discretion standard. *See United States v. Miller*, 557 F.3d 910, 917 (8th Cir. 2009). In particular, this Court considers "the totality of the circumstances," *Gall v. United States*, 552 U.S. 38, 51 (2007), to determine whether a district court has fulfilled its "mandate…to impose a sentence sufficient but not greater than necessary" in complying with the purposes of 18 U.S.C. § 3553(a). *United States v. Huff*, 514 F.3d 818, 820 (8th Cir. 2008) (quotation omitted).

As outlined in 18 U.S.C. § 3742(a), a defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence-

1) Was imposed in violation of law;

2) Was imposed as a result of an incorrect application of the sentencing guidelines; or

11

3) Is greater than the sentence specified in the application guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under Section 3563(b)(6) or (b)(11) or;

4) Was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

The Supreme Court has held that the district court has discretion to depart from the Sentencing Guidelines, but the court must consult those Guidelines and take them into account when sentencing. *See Molina-Martinez v. United States*, 136 U.S. 1338, 1342 (2016); *see also United States v. Booker*, 543 U.S. 220, 264 (2005).

This Court has been given the authority to consider the weight given by the district court to particular considerations in the sentencing methodology: An abuse of discretion occurs when: 1) a court fails to consider a relevant factor that should have received significant weight; 2) a court gives significant weight to an improper or irrelevant factor; or 3) a court considers only the appropriate factors but in weighing them commits a clear error of judgment. *United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011); *see also United States v. Kane*, 552 F.3d 748, 752 (8th Cir. 2009).

This Court reviews a revocation sentence under the same reasonableness standard that applies to initial sentencing proceeding. *United States v. Neumiller*, 529 F. App'x 796, 797 (8th Cir. 2013); *see also United States v. Petreikis*, 551 F.3d

12

822, 824 (8th Cir. 2008). On top of the processes of this Court – the district court is required to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall,* 552 U.S. at 50.

**B.    Legal Analysis**

Respectfully, Mr. Ivers's argues based on the grade C violations and the explanations, a sentence of 6-months in prison followed by 180-days at a halfway house in Fargo, North Dakota is too harsh.

The court stated it found by a preponderance of the evidence that Mr. Ivers "violated the terms of his supervised release, his not maintaining appropriate communications with the Probation Office…his refusal to talk to him on the phone, his use of profanity in dealing with… not following the instructions" of the USPO. In regards to being a resident of a North Dakota, the court stated, "So long as the defendant insists on saying something other than what the facts are; that is, that he's ordered to be a resident of North Dakota, his failure to obtain health treatment … again in violation of his supervised release." Finally, the court found that Mr. Ivers was unsuccessfully discharged from the Center. (FRHT, 79-80). Finding a Grade C violation, the court found the advisory guideline range to be 4-10 months. (FRHT, 81). The court ordered Mr. Ivers to serve 6 months in federal prison, again followed by 180-days at Centre Inc. (FRHT, 87) (DCD, 287).

13

In regards to leaving the halfway house – Mr. Ivers was threatened and feared for his safety. He told his USPO he was going to his sister's house and he did. He remained on his ankle bracelet. In regards to following the rules – he did not take a drug test because he was so ill he went to the hospital and the following day he took the test. It was for the same reason he could not communicate with his United States Probation Officer. It is true he did not communicate with his United States Probation Officer on September 8, but did after that day. He did not get North Dakota insurance because he is not a resident. The USPO could not state how long a person had to live in North Dakota in order to be deemed a resident. Without insurance, Mr. Ivers could not receive the mental health therapy that he was willing to do. His defenseless violations are that he swore at his probation officer and that he did not communicate with his USPO on September 8, 2020. As stated above, the court viewed the evidence differently.

Mr. Ivers simply wants to return home to Minnesota, begin his integration back into his community, and finish his term of supervision. The first judgement in the case did not list a special condition that he could not reside in Minnesota. After his first supervised release violation, he was ordered to serve 180-days at Centre Inc. in North Dakota. (DCD, 287). Mr. Ivers is sixty-seven years old with a slew of medical problems. He testified he has heart disease, stage 2 bladder cancer, blood in his urine, and possibly a gall stone (FRHT, 52). With the exception of his sister, a

majority of his family lives in Minneapolis area. (FRHT, 61). The prison term is unreasonable as is the time at the halfway house in North Dakota.

15

## CONCLUSION

For the above reasons, this Court should vacate Mr. Ivers's sentence and remand for resentencing.

Dated:  January 22, 2020

Respectfully submitted,

*s/Manny K. Atwal*

MANNY K. ATWAL
First Assistant Federal Defender
District of Minnesota

U.S. Courthouse, Suite 107
300 South Fourth Street
Minneapolis, MN 55415
612-664-5858

Attorney for the Appellant

Appellate Case: 20-3422     Page: 21     Date Filed: 01/25/2021 Entry ID: 4997419

In the
United States Court of Appeals
For the Eighth Circuit

| United States of America, | ) | |
| Plaintiff-Appellee, | ) | Appeal No. 20-3422 |
| | ) | |
| vs. | ) | **CERTIFICATE OF COMPLIANCE** |
| | ) | |
| Robert Phillip Ivers, | ) | |
| Defendant-Appellant. | ) | |

1.  This document complies with the type-volume limitation of FRAP
    32(a)(7)(B). Excluding the items listed in FRAP 32(f), this brief contains
    3,021 words.

2.  This document complies with the typeface requirements of FRAP 32(a)(5)
    and type-style requirements of FRAP 32(a)(6). This document has been
    prepared in proportionally spaced typeface, using Microsoft Word, in a 14-
    point Times New Roman style.

3.  The electronic version of this document has been scanned for viruses, and the
    scan indicates the electronic version is virus free.

Dated: January 22, 2021             *s/ Manny K. Atwal*

                                    MANNY K. ATWAL
                                    First Assistant Federal Public Defender

17

In the
United States Court of Appeals
For the Eighth Circuit

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff-Appellee, | ) | Appeal No. 20-3422 |
| | ) | |
| vs. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| Robert Phillip Ivers, | ) | |
| Defendant-Appellant. | ) | |

I hereby certify that on January 22, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Robert Phillip Ivers

Dated: January 22, 2021            *s/ Manny K. Atwal*

                                 MANNY K. ATWAL
                                 First Assistant Federal Public Defender

18